**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEAN WARGO, Individually and as the** | : | **JURY TRIAL DEMANDED** |
| **Administratrix of the Estate of** | : | **CIVIL ACTION** |
| **TRISTAN WARGO,** | : | **NO. 3:06-CV-2156** |
| **Plaintiff** | : | |
| | : | **JUDGE James M. Munley** |
| **vs.** | : | |
| | : | |
| **SCHUYLKILL COUNTY, et al.,** | : | |
| **Defendants** | : | |

**STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**ON BEHALF OF SCHUYLKILL COUNTY-DEFENDANTS**

The defendants, Schuylkill County, Eugene Berdanier, Acting Warden; Former

District Attorney Frank Cori; President Judge William Baldwin; Lieutenant M. Flannery;

and Lieutenant Scott Rizzardi [hereinafter "Schuylkill County defendants"], by and

through their undersigned counsel, aver that the following facts are not disputed and

may be considered by the Court in support of their Motion for Summary Judgment:

**OVERVIEW OF CLAIMS**

1.      The plaintiff's decedent, Tristan Wargo (Tristan) committed suicide on
November 6, 2004, while incarcerated at the Schuylkill County Prison.

2.      The plaintiff claims that the individual prison defendants, Acting Warden
Berdanier, Prison Counselor Kryjak, Lieutenant Flannery and Lieutenant Rizzardi, and
other medical defendants were deliberately indifferent to decedent's medical needs.
(Complaint, Document 1) (Count I).  That defendants, Schuylkill-County; Acting Warden
Berdanier, and Prison Board member, Former District Attorney Frank Cori, and
President Judge William Baldwin were deliberately indifferent to Tristan's constitutional
right by failing to have certain written policies and practices (Complaint, Document 1,
Count II).

3.      The plaintiff's Complaint also includes pendent state claims under Pennsylvania's Wrongful Death (Count III) and Survival Act (Count IV) as to all defendants (Complaint, Document 1).

### THE PARTIES

4.      The plaintiff is:

(a)      Jean Wargo, Tristan's grandmother and Administratrix of his estate.

(b)      Tristan did not reside with his grandmother and she suffered no monetary damages as a result of his death (Exhibit 59, Deposition Jean Wargo, NT 9-10)

(c)      Jean Wargo did not know of any prior suicide attempt.  Tristan never talked to her about any emotional problems (*Id.* NT 16).

(d)      Jean Wargo spoke with Tristan 2 or 3 times while in prison.  On those occasions, Tristan asked her to have his father come see him in prison.  Two days before his death, Tristan called her to ask if she would put up her home for his bail.  Jean Wargo apologized but said that pop (her husband/Tristan's grandfather) would never let her do that (NT 31).  Tristan never told her of any problems he was having in jail, just that he wanted out (*Id.* NT 32).  On October 28, 2004, Tristan robbed The Standard Drug Store, Hancock Street, McAdoo, Pennsylvania, utilizing a shotgun and taking approximately $7,000 in Oxycontin.

5.      The remaining defendants are:

(a)      Schuylkill County, Pennsylvania, is a county of the fourth class.

(b)      Gene Berdanier (Acting Warden) was appointed warden in December 2004. Following the resignation of former Warden Gerald Britton on October 4, 2004.  Berdanier served as defacto or acting warden.

(c)      Frank Cori, Esquire, is a former District Attorney and former Chairman of the Schuylkill County Prison Board.

(d)      Honorable William E. Baldwin is the President Judge of Schuylkill County and a member of the Prison Board.

(e)      Michael Kryjak was the former Prison Counselor at the Schuylkill County Prison, now deceased.

(f)     Lieutenant, now Captain Michael Flannery was a lieutenant and currently a captain.  In November 2004, his duties involved supervising the dayshift.

(g)     Lieutenant Rizzardi is a lieutenant at the Schuylkill County Prison who placed Tristan in Holding Cell No. 1 with one-hour checks on October 28, 2008 and thereafter, discovered Tristan hanging in his cell on November 6, 2004, at which time he notified emergency personnel and initiated CPR.

### ARMED ROBBERY & INCARCERATION

6.     On October 28, 2004, at approximately 0921 hours, an armed robbery was reported at the Standard Drug Store located at 322 South Hancock Street, McAdoo, Pennsylvania.  On that date, Tristan Wargo enter the drug store with a black hood pulled tightly around his face, holding a long double barrel shotgun, demanded and robbed the drug store of its supply of Oxycontin (Exhibits 6-8).

7.     Following investigation, Tristan Wargo was arrested.  Wargo received Miranda warnings and thereafter, confessed to taking Oxycontin from the drug store with an unloaded gun (Exhibit 7-8).

8.     Police Chief John Petrilla transported Tristan Wargo for his assignment before District Magistrate Judge Platchko (Exhibit 10; NT 5, 23-25).  At that time, Tristan Wargo only stated that he wanted to put all of this behind him.  Routine bail was set at approximately $50,000 straight cash and Officer Petrilla took Tristan Wargo to the Schuylkill County Prison arriving at 1945 hours.  During the time of his transportation, Tristan Wargo did not make any threats of harm to himself or express any suicidal ideation. Tristan Wargo was quiet and remorseful (NT 24-25).  On admission to he Schuylkill County Prison, Chief Petrilla did not have any conversation with Correctional Officer Wowak or Correctional Officer Murton about any unusual behavior or anything about suicidal ideation (NT 25-26).

9.     On arrival at the Schuylkill County Prison, Correctional Officer Wowak and Correctional Officer Murton were the correctional officers on duty.  On October 28, 2004, Tristan Wargo was committed to the Schuylkill County Prison on charges of robbery, aggravated assault, simple assault, recklessly endangering another person, theft by unlawful taking and receiving stolen property (Exhibits 6, 12).

10.     On intake screening, Tristan Wargo's behavior did not suggest a risk of suicide (Exhibit 13, Question 9).

11.     On intake screening, Tristan Wargo denied that he had been recently hospitalized or recently seen by any medical or psychiatric doctor for any illness (Exhibit 13, Question 15).

12.     On intake screening, Tristan Wargo disclosed back and heart problems (Exhibits 13 & 26).

13.     On intake, Tristan Wargo did not appear to be under the influence of alcohol or drugs.  Visible signs of withdrawal symptoms were noted.   Tristan Wargo reported being on medication (Exhibit 13, Questions 7, 8, 12).

14.     By reason of Tristan Wargo's self-report, following admission screening, Lieutenant Rizzardi was notified and placed Resident Wargo in medical holding cell H-1 and ordered a check every hour (Exhibits 48, 49, NT 22-23).

15.     Lieutenant Rizzardi was the Lieutenant on duty when Tristan was admitted.  Lieutenant Rizzardi stated that Tristan was quiet and self-reported anticipated withdrawal from Oxycontin.  By reason of his self-report, Lieutenant Rizzardi anticipated that Tristan would have withdrawal.  He ordered Tristan placed in a medical holding cell with one hour checks.  The reason for the housing status was listed as medical (Exhibits 17, 48, 49, NT 22-23).

16.     Tristan underwent medical evaluation on 10/28/04.  Examination revealed the following:

> ➢ Reported allergies in the nature of insomnia and nausea to Wellbutrin (not listed as a current medication).

> ➢ Medications listed as Oxycontin 80 mg. bid.; Neurontin, 400 mg., tid., Skelaxin 800 mg., tid., Spirazide daily.

> ➢ Medical history revealed took Oxycontin for 2 ½ years.  Deptracardia – MVP Hole in Heart – Heart Arrhythmia – Congenital Heart Disease – 5 Ruptured Discs in Back – Fell Down 18 Cement Steps – 3/02.

> ➢ On social history, Tristan reported smoking two packs of cigarettes per day for 9 years.  Tristan reported that he only used Oxycontin per prescription – will experience withdrawal (w/d).

4

➢ Physical examination was within normal limits (Exhibit 15).

17.    On October 30, 2004, at 6:45 a.m., while housed in Medical Holding Cell 1, Tristan told Correctional Officer Schlack "inmate told this C/O that he had 10-12 Oxycontin stuck in his rectum and then he stated that he took them. Lt. notified" (Exhibit 19).

18.    On receipt of the Accident/Incident Report, Lieutenant Flannery went to Holding Cell #1 and spent 5-10 minutes with Resident Wargo sitting on the bed. Lieutenant Flannery found no evidence of consumption, i.e. a baggie. Resident Wargo stated that he did not remember when he took the Oxycontin and appeared to Lieutenant Flannery "as normal as you and I'. Nonetheless, Lieutenant Flannery directed that Resident Wargo be kept under observation in a holding cell, placed in a gown and ordered 15 minute checks (Exhibit 46, 47, NT 18-25, 58, Exhibit 17).

19.    On October 30, 2004, at 1:35 p.m., Correctional Officer Bevan filed an incident report stating "At above date & time, while doing checks, this C/O observed Res. Wargo, T. in Holding #1 with a handful of thread that he pulled off from his mattress. Thread was removed from resident and mattress was also removed. Res. Wargo T. was informed he would be charged for the price of a new mattress." Lieutenant Flannery was notified (Exhibit 20).

20.    Following the October 30, 2006, 1:35 p.m. Incident Report, Lieutenant Flannery did not change the order that Tristan be placed in a gown with 15-minute checks (Exhibit 48, ¶6).

21.    On October 31, 2004, at 12 noon, Correctional Officer Connors filed an incident report stating "On this date & time Res. Wargo T. was complaining to C/O Mendinsky that something was in his eye. C/O Mendinsky looked and seen a staple sticking out of his eye. At that time, Lt. Flannery was notified and came up to holding 1 and pulled it out" (Exhibit 21). Lieutenant Flannery pulled the staple out. In removing the stapled, Lieutenant Flannery put gloves on and pulled it out. The staple was in Tristan's eyebrow to keep a piercing open (Exhibit 46, ¶7; Exhibit 47, NT 44-46).

22.    Lieutenant Flannery states that to his knowledge, Resident Wargo was never on actual suicide watch at any time while he was in the holding cell area (Exhibit